## HYNEK v. CITY OF SAN ANGELO.

### No. 10225.

Court of Civil Appeals of Texas.

Austin.

May 19, 1954.

Wm. E. Davenport, San Angelo, for appellant.

H. D. Howard, City Atty., San Angelo, for appellee.

HUGHES, Justice.

The City of San Angelo, a Home Rule City, brought this suit in its governmental capacity and as custodian of its streets and public places to permanently enjoin Emil Hynek, appellant, from obstructing or barricading a strip of land, particularly described, 45' wide and 254.02' long extending from 6th Street to 7th Street, such strip being commonly known as "Minter Street," and to require removal of barricades placed thereon by him.

The City alleged that the owner of the property at the time of its subdivision into lots intended to dedicate this strip as a street and that while this intention was inadequately expressed that it became sufficient and effective by subsequent use of such strip as a street by the public and acquiescence in such use by the owner and his successors in interest.

The City also alleged that the public had acquired an easement over such strip for street purposes by adverse use for such purposes for more than ten years prior to July 1, 1952.

Appellant answered by a general denial and by specially pleading that he was the owner of Lots 20 and 21, Sterling C. Robertson Subdivision of 5 acre Lot No. 6 of Miles Addition to the City of San Angelo. He prayed that the City take nothing and that he recover title to and possession of such lots together with his damages.

Trial was to a jury which made these findings:

That the owner of the Robertson Subdivision in platting such subdivision left the strip of land in question and that thereafter the public made use of such strip as a road and street which use was acquiesced in by the owner of such subdivision and his successors in interest; that the public had made adverse use of such strip for street purposes for ten years prior to July 1, 1952.

The jury also found that appellant had not adversely possessed a portion of this strip, particularly described, for five years prior to February 10, 1953.

Upon this verdict judgment was rendered for the City establishing an easement over the strip for street purposes and requiring appellant to remove obstructions therefrom and enjoining him from thereafter obstructing the same.

Appellant has two points, one of which is that the court erred in not granting his motion for judgment notwithstanding the verdict and the other that a new trial should have been granted because of newly discovered evidence.

Under point one appellant argues only that since there is evidence that there was no strip left between his Lots 20 and 21 and the Miles Addition acre lots to the east that "the burden was on appellee to show where the west boundary of these acre lots were to mark the corners on the ground," and that it failed to discharge this burden and that this prevented the rendition of a judgment from which the strip could be located on the ground with certainty.

The judgment describes the strip by references to 6th and 7th Streets; west line of Acre Lot 8, Miles Addition No. 1; and west lines of Lots 10 and 11, Minter Addition.[1]

Mr. J. A. Simpson, a land surveyor for 50 years and County Surveyor of Tom Green County for the last 27 years testified that he had done considerable surveying work in the Minter Addition, Miles Addition Acre Lots and Robertson Subdivision of Acre Lot 6.

We quote the following from the testimony of Mr. Simpson not only to show that the west line of the Acre Lots was located but to show that Minter Street can be definitely, accurately and easily located from the judgment:

···· "I have seen the original plat of the Robertson subdivision. The first time I saw it was about October 1928. * * * That strip you show me on the plat indicates a street, the way interpreted by me; I left it there as a street on both sides in the Minter Addition and Robertson subdivision. That black line would be the actual east line of the Robertson subdivision; the field notes of Acre Lot 6, which is a Robertson subdivision shows it to be a subdivision of (five) Acre Lot 6, Miles Addition, and the field notes on that are practically the same as shown on this map here.

"I have surveyed that property on the ground. In 1926 I made a plat of the Robertson subdivision showing a street between that and Minter Addition and Acre Lot 8 of Miles Addition. Plaintiff's Exhibit No. 5 is a plat I made myself; I do not think it is to scale because I just placed it over the map on record and traced it. At that time I located the Robertson subdivision on the ground, including the east line of that subdivision, which would be the east line of Block 21. I also located the west line of Minter and of Acre Lot 8, Miles Addition; there is a strip in there between the two different additions. It is a street on the ground and I made the plat. * * *

1. Minter Addition is a subdivision of Acre Lots 9 and 10 and the west lines of Lots 10 and 11 of this Addition is a northeasterly extension of the west line of Acre Lot 8.

"Thereafter I made a plat of the Robertson subdivision showing the east line of the subdivision, I believe in September 1952. Plaintiff's Exhibit No. 6 is that plat which I made; the plat accurately shows the position of the east portion, of the addition as I found it on the ground, exactly like I staked it off. So far as I know the pins are still there; I haven't checked them. I found the east line of the subdivision to be in the same place that I found it in 1928 when I made the other plat. When I made the 1952 plat east of the east line was what is known as Minter Street. * * *

"I have my field book which contains a plat of the Robertson subdivision, work I did for Mr. Hunter in 1945. This field book is made up directly on the basis of the original deeds. The plat in my field book is the same as the plat introduced in evidence. My records show that I made five surveys in that Robertson subdivision, beginning back in 1928; I probably have made more than that. Every time I have been on the ground and surveyed the property in and about Minter Street I have always found a street there; * *

"I went out to the Hynek property on 6th Street at his request and showed him where his corners were. I showed him the stakes in the ground and showed him Minter Street."

There is an aerial map in the record which shows this street to be plainly discernible from the air and there is also in evidence an official map of the City showing the location of 6th and 7th Streets.

Appellant's first point is without substance and is overruled.

Appellant's claim of newly discovered evidence is based upon the affidavit of Mrs. Vannie Norris which is to the effect that there never was any Minter Street on the ground and that there are two houses in or partly in the strip the City was trying to establish as Minter Street.

[2] This evidence is merely cumulative of the testimony given by several other witnesses and would not, in our opinion, have caused the jury to return a different verdict had it been before them. The trial court exercised sound discretion in refusing to grant a new trial on this ground.

Finding no error it is ordered that the judgment of the trial court be affirmed.

Affirmed.

